UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIS MARCEL WILLIAMS,

    Petitioner,

Case No. 5:06-cv-171

v.                                           Hon. Janet T. Neff

WILLIE O. SMITH,

    Respondent.
_____/

**REPORT AND RECOMMENDATION**

Petitioner, a prisoner currently incarcerated at a Michigan correctional facility, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**I.    Background**

This action arises from the robbery of a convenience store in Holt, Michigan (sometimes referred to as the "Marathon gas station") at approximately 10:45 a.m. on November 8, 2002. Trial Trans. I at 13-17, 22-35. Following a bench trial, the judge convicted petitioner of armed robbery, M.C.L. § 750.529 and possession of a firearm during commission of a felony (felony-firearm), M.C.L. § 750.227b. *People v. Willis Marcel WIlliams*, No. 251317, slip op. at 1 (Mich. App. May 17, 2005) (docket no. 23). Petitioner was sentenced as a third habitual offender, M.C.L. § 469.11, to 120 to 240 months in prison for the armed robbery conviction with a consecutive two year sentence for the felony firearm conviction. *Id.*

Petitioner, through counsel, presented the following issue in his direct appeal to the Michigan Court of Appeals:

> Whether complainant's highly suggestive confrontation with [petitioner] at the preliminary examination and subsequent in-court identification denied [petitioner] due process and a fair trial; alternatively, defense counsel was ineffective for failing to move to suppress the identification.

Brief on Appeal (docket no. 23). The Michigan Court of Appeals affirmed the convictions. *People v. Willis Marcel Williams*, No. 251317.

Mr. Williams raised the same issue in his *pro se* application for leave to appeal to the Michigan Supreme Court, which that court denied. *People v. Willis Marcel Williams*, No. 129076 (Mich. Oct. 31, 2005) (docket no. 24).

Petitioner raises the same grounds for relief in his habeas petition.

### III. Petitioner's claims

#### A. Standard of review under 28 U.S.C. § 2254

Petitioner seeks relief under 28 U.S.C. §2254, which provides that "a district judge shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." Before petitioner may seek such relief in federal court, however, he must first fairly present the substance of his claims to all available state courts, thereby exhausting all state remedies. *Picard v. Connor*, 404 U.S. 270, 277-78 (1981); *Clemmons v. Sowders*, 34 F.3d 352, 354 (6th Cir. 1994); *see* 28 U.S.C. §2254(b)(1)(A). Here, petitioner has exhausted this issue.

Where the state court has adjudicated a claim on its merits, the federal district court's habeas corpus review is limited by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which provides in pertinent part that:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication–

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established Federal law if the state court arrived at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decided the case differently than a Supreme Court decision based upon a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000); *Lopez v. Wilson*, 426 F.3d 339, 341 (6th Cir. 2005) (*rehearing en banc*). An unreasonable application of clearly established Federal law occurs "when the state court identified the correct legal principle from the Supreme Court but unreasonably applied the principle to the facts of the case before it." *Id.*

A determination of a factual issue by a state court is presumed to be correct. 28 U.S.C. § 2254(e)(1). A habeas petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence that the state court's determination was erroneous. *Magana v. Hofbauer*, 263 F.3d 542, 546-47 (6th Cir. 2001).

### B. The victim's identification of petitioner

First, petitioner contends that he was denied the right to due process and a fair trial because the victim's identification of him at the preliminary examination was unduly suggestive. Petitioner's counsel did not seek to suppress the victim's identification at the preliminary examination, but chose to address the victim's identification of petition as part of the bench trial.[1]

#### 1. State court proceedings

The preliminary examination lasted three days. On the first day, the prosecutor presented testimony from two investigating officers. *See* Prel. Exam. Trans. I. On the second day, the court heard from a latent fingerprint examiner, Lieutenant Michaud of the Michigan State Police's forensic laboratory, who testified that he matched two latent fingerprints from the November 8th newspaper that was touched by the robber with those of petitioner. Prel. Exam. Trans. II at 24-26. In addition, the victim (Mr. Singh), took the stand and gave the following testimony. A man entered the store and grabbed the newspapers for November 7th and 8th. Prel. Exam Trans. II at 39-40. The man also asked for grape juice, which the victim got for him. *Id.* at 40. Then, the man said he wanted to get one more thing. *Id.* When the victim turned his back, the man was behind the victim with a gun. *Id.* The victim testified that he faced the man, who pointed the gun at him and said "give me everything you got." *Id.* at 42, 44. The victim gave the man all of the money in the store, the store's (surveillance) videotape, and his wallet. *Id.* at 42. The victim identified petitioner as the robber. *Id.* at 43-44. The victim's testimony included the following colloquy:

---

[1] Counsel's trial strategy gave rise to petitioner's alternative claim of ineffective assistance of trial counsel. *See* § II.C., *infra*.

> Q. When you look at him, what is it about him that you recognize?
>
> A. That's the face. I recognize him. He was totally in front of me, you know, when he was pointing the gun.
>
> THE COURT. His face wasn't covered?
>
> A. No.

*Id.* at 44.

On cross-examination, the victim admitted that he identified "somebody totally different" from petitioner in a photo lineup, explaining that the picture was "not clear." *Id.* at 49, 55. The victim explained that he could not recognize the robber in a photo, but that he could "by face." *Id.* at 49-50. The victim further testified that he told the police officer, on the day he was robbed, that he did not think he could recognize the robber from a picture. *Id.* at 50.

The victim testified that he recognized petitioner in person because he looked like the basketball player Kobe Bryant. *Id.* at 54. The victim also said he recognized petitioner by size and weight. *Id.* at 55. The robber, like petitioner, was taller than the victim, i.e., the robber was about six feet tall and the victim was about five feet seven inches tall. *Id.* The victim identified the robber as a black male, weighing about 175 to 180 pounds, and approximately 35 to 38 years old. *Id.* at 55-56. In addition, the victim testified that he was with the robber for about five minutes and that the robber was the only customer in the store. *Id.*

Petitioner was appointed a new attorney (Mr. Reynolds) shortly before the third day of the preliminary examination. Prel. Exam. Trans. III at 75-76. New counsel did not present any evidence but made "a nonspecific objection to the bindover itself." *Id.* at 76. The court found probable cause that petitioner committed the crime based on the victim's testimony, the testimony of the officer who seized evidence at the scene that was identified as being touched by the robber

5

(i.e., the newspaper), and that testimony of the latent fingerprint examiner who matched petitioner's fingerprints to the newspaper. *Id.* at 77-78.

At the conclusion of petitioner's bench trial, the judge found that the victim was robbed on November 8, 2002. Trial Trans. III at 542. The contested issue was whether petitioner was the person who committed the crime. The court found that petitioner was the robber:

> Defendant claims an alibi defense and disputes Mr. Singh's identification of the Defendant as the robber.
>
> The Court finds that the Prosecution has proven beyond a reasonable doubt that the Defendant committed the armed robbery. In that, the Court finds Mr. Singh's identification of the Defendant is credible, in that the Defendant was in the store for approximately five minutes, and he testified that he looked - Mr. Singh testified that he looked directly into Defendant's face. The store was well lighted, and so Mr. Singh had a good opportunity to observe the Defendant.
>
> Mr. Singh testified that he was absolutely sure of the Defendant's identification as the robber. Mr. Singh described Defendant as taller than himself. [At trial] [h]e testified that he, Mr. Singh, was 5'7", and the robber was taller than him. I believe he said approximately 6'. He - Mr. Singh believed that the Defendant was approximately thirty years old, and the Court notes that the Defendant was approximately thirty years old, and the Court notes Defendant testified he was thirty years old.
>
> In regard to Mr. Singh's selection at the photo show of Subject No. 4 in Defendant's Exhibit D, Mr. Singh testified he chose Subject No. 4 because he believed No. 4 looked like the robber, and the Court notes that No. 4 in Defendant's Exhibit D does resemble the Defendant, in fact, and the Court notes that they had similar facial hair patters around the mouth and a faint - like a faint mustache and a goatee, both No. 4 and No. 5, and No. 5 was the Defendant.
>
> The Court notes that, um Defendant was found in his cell shaving all of his facial hair, including his eyebrows, and he was starting to shave his head when the deputy came to get him for the lineup. And when asked about - by the Court why he shaved his eyebrows, he responded that - he responded, um, to the effect that, um, he initially had - initially refused to participate in the corporeal lineup, and then decided that, um, if he was going to have to do the lineup, he was going to try to alter his appearance. So the Court finds that this could be indicative of a guilty conscience.

6

> We also have the fingerprint evidence as testified to by Lieutenant Michaud of the Michigan State Police, and he's the fingerprint expert. Defendant's right thumb and his pinky fingerprint were found at the scene on a November 8th, 2002, Lansing State Journal.

Trial Trans. III at 542-44.

On appeal, petitioner raised a Due Process claim, which the Michigan Court of Appeals addressed as follows:

> Defendant argues that he was denied the right to due process and a fair trial by the admission of identification evidence. More specifically, he argues that the circumstances of the preliminary examination were unduly suggestive and that there was no independent basis for the victim's subsequent in-court identification. We disagree. "The trial court's decision to admit identification evidence will not be reversed unless it is clearly erroneous . . . . Clear error exists if the reviewing court is left with a definite and firm conviction that a mistake has been made." *People v. Harris*, 261 Mich.App 44, 51; 680 NW2d 17 (2004).
>
> An identification procedure can be so suggestive and conducive to irreparable misidentification that it denies a defendant due process of law. *People v. Williams*, 244 Mich.App 533, 542; 624 NW2d 575 (2001), citing *Stovall v. Denno*, 388 U.S. 293, 301-302; 87 S Ct 1967; 18 L.Ed.2d 1199 (1967). To sustain a due process challenge, a defendant must show that the pre-trial identification procedure was so suggestive in light of the totality of the circumstances that it led to a substantial likelihood of misidentification. *People v. Kurylczyk*, 443 Mich. 289, 302; 505 NW2d 528 (1993). Further, the fact that the pretrial confrontation occurred at a preliminary examination does not mean that it cannot be considered unduly suggestive. *People v. Colon*, 233 Mich.App 295, 304; 591 NW2d 692 (1998). But this Court has repeatedly held that not all confrontations at preliminary examination are impermissibly suggestive. *See, e.g., People v. Hampton*, 138 Mich.App 235, 238; 361 NW2d 3 (1984). Moreover, just because the identification procedure is suggestive does not mean that it is constitutionally defective. *Kurylczyk*, *supra* at 306.
>
> Defendant claims that the preliminary examination identification was tainted because defendant was the only black person in the courtroom and the only person in the courtroom wearing a jail jumpsuit, leg chains, and handcuffs. While there is no question that the preliminary examination in this case was a suggestive atmosphere, *Colon*, *supra* at 305, the relevant test is whether the procedure was so impermissibly suggestive in light of the totality of the circumstances that it led to a substantial likelihood of misidentification. *Kurylczyk*, *supra* at 302. The relevant factors for evaluating the totality of the circumstances include "the opportunity for

7

the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of a prior description, the witness' level of certainty at the pretrial identification procedure, and the length of time between the crime and the confrontation." *Colon*, *supra* at 304-305.

In the instant case, the victim testified that he observed defendant for approximately five minutes inside the store and that he focused on defendant's face when defendant was pointing a gun at him. Additionally, the victim's description of defendant given to the police immediately after the robbery was consistent with defendant's appearance. Finally, the victim testified that he had no doubt about his identification of defendant at the preliminary examination, which occurred approximately three months after the robbery, and that he had no contact with defendant between the robbery and the preliminary examination. Under the totality of the circumstances, defendant has failed to show that there was a substantial likelihood of misidentification. Therefore, we conclude that the identification of defendant at the preliminary examination was not unduly suggestive. Accordingly, we see no error in the subsequent admission of the victim's identification of defendant at trial.

*People v. Willis Marcel Williams*, No. 251317, slip op. at 1-2.

## 2. Discussion

In *Carter v. Bell*, 218 F.3d 581 (6th Cir. 2000), the court set forth the procedure for determining whether a pretrial identification violated the Due Process Clause:

The Due Process Clause prohibits the use of identifications which under the totality of the circumstances are impermissibly suggestive and present an unacceptable risk of irreparable misidentification. *See Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). "A conviction based on identification testimony following pretrial identification violates the defendant's constitutional right to due process whenever the pretrial identification procedure is so 'impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.'" *Thigpen v. Cory*, 804 F.2d 893, 895 (6th Cir.1986) (quoting *Simmons v. United States*, 390 U.S. 377, 384, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968)). The paramount issue is whether the suggestiveness so undermines the reliability of the identification as to offend due process. *See Foster v. California*, 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969). We look to the reliability of the identification in determining its admissibility; if an identification is reliable, it will be admissible even if the confrontation procedure was suggestive. *See Manson*, 432 U.S. at 114, 97 S.Ct. 2243; *Biggers*, 409 U.S. at 199, 93 S.Ct. 375. Following *Biggers*, we consider the following factors in evaluating reliability: 1) the opportunity of the

8

witness to view the defendant at the initial observation; 2) the witness' degree of attention; 3) the accuracy of the witness' prior description of the defendant; 4) the level of certainty shown by the witness at the pretrial identification; and 5) the length of time between the initial observation and the identification. 409 U.S. at 199-200, 93 S.Ct. 375. The degree of reliability of the identification, as indicated by the above-stated factors, is to be considered in light of the degree of suggestiveness of the identification procedure and of the totality of the circumstances in determining whether due process requires suppression of the identification. *See Manson*, 432 U.S. at 113-14, 97 S.Ct. 2243.

*Carter v. Bell*, 218 F.3d at 605.

The Michigan Court of Appeals correctly applied the *Biggers* factors in evaluating the victim's credibility, and had evidence to support its finding: that the victim observed petitioner for approximately five minutes inside of the store; that the victim focused on petitioner's face when petitioner pointed the gun at the victim; that the victim's description of petitioner given to the police immediately after the robbery was consistent with petitioner's appearance; that the victim testified that he had no doubt about his identification of petitioner at the preliminary examination, which occurred approximately three months after the robbery; and that the victim had no contact with petitioner between the robbery and the preliminary examination.

Under the totality of the circumstances, the court concluded that due process does not require suppression of the victim's identification. *Carter*, 218 F.3d at 605; *Manson*, 432 U.S. at 113-14.[2] The state court's decision was neither contrary to, nor an unreasonable application of, clearly established Federal law as determined by the Supreme Court; nor were the decision and

---

[2] Some courts in the Second Circuit Court of Appeals, noting that the five factor general due process standard announced in *Biggers* and *Manson* was not exclusive, have utilized a "sixth factor" in evaluating a due process violation, i.e., "whether sufficient independent evidence of the defendant's guilt existed to support the reliability of the identification." *Brisco v. Ercole*, 565 F.3d 80, 94 (2nd Cir. 2009), quoting *Kennaugh v. Miller*, 289 F.3d 36, 47 (2nd Cir. 2002). Such a "sixth factor," or "corroborating evidence of guilt" exists here, because petitioner's fingerprints were found on a newspaper touched by the robber.

9

convictions based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254 (d). Accordingly, petitioner is not entitled to relief on this claim.

### C. Ineffective assistance of counsel

Alternatively, petitioner contends that his trial counsel was ineffective for failing to move to suppress the preliminary examination identification. The Michigan Court of Appeals addressed this issue as follows:

> Defendant also argues that his trial counsel was ineffective for failing to object to or moving to suppress the victim's identification of defendant at the preliminary examination. We again disagree. Because defendant failed to preserve this issue by not moving for a new trial or seeking an evidentiary hearing, our review is limited to the existing record. *People v. Thomas*, 260 Mich. App 450, 456; 678 NW2d 631, lv den 471 Mich. 851 (2004).
>
> To establish a claim of ineffective assistance of counsel, defendant bears the burden of showing that trial counsel's performance fell below an objective standard of reasonableness, and that trial counsel's representation was so prejudicial that defendant was denied a fair trial. *People v. Hoag*, 460 Mich. 1, 5-6; 594 NW2d 57 (1999). To meet the second part of the test, defendant must show that a reasonable probability exists that the outcome of his trial would have been different but for trial counsel's error. *Id.* at 6. In addition, "defendant must overcome a strong presumption that counsel's performance constituted sound trial strategy." *People v. Riley*, 468 Mich. 135, 140; 659 NW2d 611 (2003). This Court will not substitute its judgment for that of trial counsel regarding matters of trial strategy, *People v. Rice (On Remand)*, 235 Mich.App 429, 445; 597 NW2d 843, lv den 461 Mich. 941 (1999), which includes a trial counsel's decision not to move for suppression of identification testimony, *People v. Wilki*, 132 Mich.App 140, 145; 347 NW2d 735 (1984).
>
> We note that while defense counsel did not specifically move to suppress this evidence, the entire issue of the victim's identification of defendant - including the circumstances of the preliminary examination - were presented to the court prior to proofs. The court ruled that if the victim were to identify defendant at trial, the issue of pretrial identification would go to the weight of the in-court identification, not its admissibility. In any event, given that the preliminary examination was not impermissibly suggestive and that the subsequent in-court identification had a sufficient independent basis for admission, counsel cannot be faulted for his actions.

*People v. Willis Marcel Williams*, No. 251317, slip op. at 2-3.

The Sixth Amendment provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." "[T]he proper standard for attorney performance is that of reasonably effective assistance." *Strickland*, 466 U.S. at 687. In *Strickland*, the Supreme Court set forth a two-prong test to determine whether counsel's assistance was so defective as to require reversal of a conviction: (1) the defendant must show that counsel's performance was deficient and (2) the defendant must show that counsel's deficient performance prejudiced the defense, i.e., "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* In making this determination, the reviewing court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690. Scrutiny of counsel's performance is highly deferential, and the court is to presume that counsel rendered adequate assistance and made decisions with reasonable professional judgment. *Id.* at 689-690.

"[T]he failure to file a suppression motion does not constitute *per se* ineffective assistance of counsel." *Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986). The decision not to suppress evidence is a strategic choice. *Rockwell v. Palmer*, 559 F. Supp. 2d 817, 834 (W. D. Mich. 2008). As the court explained:

> "A strategic decision cannot be the basis for a claim of ineffective assistance unless counsel's decision is shown to be so ill-chosen that it permeates the entire trial with obvious unfairness." *Hughes v. United States*, 258 F.3d 453, 457 (6th Cir.2001). A particular strategy need not be one most lawyers would adopt, "but it must be within the range of logical choices an ordinarily competent attorney . . . . would assess as reasonable to achieve a specific goal." *Cone v. Bell*, 243 F.3d 961, 978 (6th Cir.2001).

*Id.* at 834-35.

Petitioner has failed to show any basis to find that a motion to suppress Mr. Singh's testimony at the preliminary examination would have been granted. Petitioner's counsel thoroughly cross-examined Mr. Singh at the preliminary examination and pointed out his failure to identify petitioner from a photographic lineup. Nevertheless, the district court found probable cause to bindover petitioner based upon Mr. Singh's testimony and the fingerprint evidence. The robber's identification was an issue of fact before the trial court, which, like the district court, considered not only Mr. Singh's failure to identify petitioner from a photograph, but also petitioner's attempt to alter his appearance and the fingerprint evidence linking him to the crime. Under the circumstances of this case, counsel's strategic choice to forgo a jury and press the issue of identity before the circuit judge at the bench trial fell "within the range of logical choices an ordinarily competent attorney . . . . would assess as reasonable to achieve a specific goal." *Cone*, 243 F.3d at 978. Furthermore, for the reasons discussed in § III.B., *supra*, there was no basis to suppress the victim's identification on Due Process grounds. Counsel cannot be deemed ineffective for failing to raise an argument that is without merit. "There can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument." *United States v. Sanders*, 165 F.3d 248, 253 (3rd Cir. 1999). *See Lilly v. Gillmore*, 988 F.2d 783, 786 (7th Cir. 1993) ("[t]he Sixth Amendment does not require counsel . . . to press meritless issues before a court").

The Michigan Court of Appeals' resolution of this issue was neither contrary to, or an unreasonable application of, clearly established Federal law as determined by the Supreme Court; nor was the decision based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d). Accordingly, petitioner is not entitled to habeas relief on this claim.

### IV. Recommendation

I respectfully recommend that petitioner's habeas petition be **DENIED**. Rule 8, Rules Governing § 2254 Cases in the United States District Courts.


Dated: November 9, 2009 /s/ Hugh W. Brenneman, Jr.
HUGH W. BRENNEMAN, JR.
United States Magistrate Judge


ANY OBJECTIONS to this Amended Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).